UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

KYLE B. RICHARDS et al.,

                     Plaintiffs,                     Case No. 1:14-cv-84

v.                                                Honorable Janet T. Neff

RICK SNYDER et al.,

                     Defendants.

_____/

## OPINION

This is a civil rights action brought by two state prisoners pursuant to 42 U.S.C. § 1983. Plaintiff Lutz has been dismissed for lack of prosecution. The Court has granted Plaintiff Richards leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Kyle B. Richards presently is incarcerated at the St. Louis Correctional Facility but complains of events that occurred at the Bellamy Creek Correctional Facility (IBC). In his *pro se* amended complaint, Plaintiff sues Governor Richard Snyder, Lieutenant Governor Brian Calley, Michigan Department of Corrections (MDOC) Director Daniel Heyns,[1] MDOC Deputy Director Unknown Sherry, MDOC Chief Deputy Director Unknown Sinclair, MDOC Assistant Deputy Director Unknown Finco, IBC Warden Ken McKee, IBC Residential Unit Manager Robert Mote, IBC Deputy Warden Mike Macaulley, IBC Assistant Deputy Warden Unknown Triewieller, IBC Assistant Resident Unit Supervisor Brian Hadden, Attorneys Richard McLellan and James White, MDOC Regional Program Administrator Unknown Kurtis, State Prison Policy Administrator Justin Amash and IBC Grievance Program Specialist Daphne Johnson.

Plaintiff lists the allegations in his complaint by claim. In "Claim 1," Plaintiff alleges that Defendants have created prison conditions that result in an extreme lack of medical care. Plaintiff states that he suffers from seizures, vomiting, internal bleeding, weight loss, fatigue, lethargy, fainting and coughing up blood. He complains that IBC lacks proper medical equipment, such as "EKG, M.R.I., X-Ray or Catscan machines," to diagnose and treat prisoners. (Compl., docket #35, Page ID#158.) Plaintiff states that he has not received treatment because there is only one doctor for over two thousand prisoners. Plaintiff contends that Defendants' conduct violated his rights under the Eighth and Fourteenth Amendments, and the Michigan constitution.

In "Claim 2," Plaintiff complains that there has been overcrowding in the prison in 2011, 2012 and 2013. Because of the overcrowding, Plaintiff alleges that there is increased

---

[1]Plaintiff spells the MDOC Director's name as Daniel Heynes. The correct spelling of the MDOC Director's name is Heyns. The Court will use the correct spelling throughout the opinion.

violence.  Plaintiff states that he purposely acts out and incurs misconducts so he can stay in segregation.  Since IBC places two people in a cell, Plaintiff alleges that harmful bacteria from the secretion of feces and urine contaminate the air and causes nausea and vomiting.  Moreover, Plaintiff claims that those who use the toilets in the cells are exposing themselves to other inmates, and, thus, may become sexual assault victims.   Plaintiff claims that these conditions violate his Eighth and Fourteenth Amendment rights, and the Michigan constitution.

In "Claim 3," Plaintiff alleges that Defendants unconstitutionally banned "pornographic publications, enforc[ed] excess [censorship]," and "depriv[ed] Plaintiff of 'sexually stimulating materials.'"  (Compl., docket #35, Page ID#164.)  Plaintiff claims that without his pornographic material, he has gone through withdrawal and experienced high levels of stress.  Plaintiff claims that these conditions violate his First and Eighth Amendments rights and constitute torture in violation of 18 U.S.C. § 2340.

In "Claim 4," Plaintiff alleges that Defendants Snyder, Calley, McLellan, Heyns, Finco, McKee and Macaulley engaged in unconstitutional gender-based segregation in the Michigan prison system.[2]  Plaintiff complains that those prison officials have violated Plaintiff's Eighth Amendment rights by exposing Plaintiff to the risk of rape, sexual assault, homosexuality and violence because of the gender-based segregation.  Plaintiff also argues that the lack of social interaction with females has caused psychological damage to him and created sexually frustrated prisoners who are forced to rape each other or staff.  Further, Plaintiff alleges that he has a liberty interest in accessing the same facilities as females under the Fifth and Fourteenth Amendments.  In

---

[2]Plaintiff also asserts claims against Tonya Shuitmaker, Anthony Derezinski, Vincent Gregory, Mark Meadows and Unknown Sheit in his complaint.  However, Plaintiff failed to name any of those individuals as Defendants in this action.

addition, Plaintiff alleges violations of the Michigan constitution, 18 U.S.C. § 2340, his First Amendment right to association and the Ninth Amendment.

In "Claim 5," Plaintiff argues that Defendants Snyder, Calley, McLellan and Heyns have violated his Eighth Amendment rights by denying him "recreational appliances" so that he suffers from sensory deprivation and mental torture. (Compl., docket #35, Page ID#170.) Plaintiff also alleges that Defendants have violated federal statutes on torture and terrorism, 18 U.S.C. § 2340 and 18 U.S.C. § 2333, respectively, and the Michigan constitution by torturing prisoners with sensory deprivation. Plaintiff complains that prisoners spend eighteen hours or more in a cell without any stimulating activity. While Plaintiff could read a book, he alleges that the amount of concentration required to read a book could trigger seizures in Plaintiff.

In "Claim 6," Plaintiff claims that Defendants Snyder, Sherry, Finco, McKee, McLellan, White and Amash violated his First and Fourteenth Amendment rights by "refus[ing] to file, lodge, or otherwise register [Plaintiff's] petitions for 'legislative' consideration, and otherwise obstructed Plaintiff from being able to petition 'legislative boards' and agencies by mismanaging [Plaintiff's] petitions." (Compl., docket #35, Page ID#173.)

In "Claim 7," Plaintiff alleges that Defendants violated his Fourth, Fifth and Fourteenth Amendment rights, Civil Rights of Institutionalized Persons (CRIPA), 42 U.S.C. § 1997 *et seq.*, and the Michigan constitution by enforcing MDOC Policy Directive 04.07.112, "Prisoner Personal Property," (effective Dec. 12, 2013). Plaintiff complains that the regulations on property and appliances are unfair and discriminatory and violate Plaintiff's equal protection rights. Plaintiff states that the MDOC regulations target poor people because they cannot afford MP3 players,

televisions and electronic appliances.   Plaintiff also complains that MDOC Policy Directive 04.07.112 unlawfully bans electronic games, tablets and computers.

For relief, Plaintiff seeks compensatory and punitive damages and declaratory relief.

## **Discussion**

### I.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.   *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").   The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."   *Twombly*, 550 U.S. at 570.   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 679.   Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).   "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."   *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Claim 1

Plaintiff alleges that Defendants have created prison conditions that result in an extreme lack of medical care so that he suffers from seizures, vomiting, internal bleeding, weight loss, fatigue, lethargy, fainting and coughing up blood on a weekly basis. He complains that IBC lacks proper medical equipment to diagnose and determine the cause of Plaintiff's ailments. Plaintiff states that he has not received treatment because there is only one doctor for over two thousand prisoners. Plaintiff contends that Defendants violated his rights under the Eighth Amendment, Equal Protection Clause of the Fourteenth Amendment, and the Michigan constitution.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately

- 6 -

indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d at 899. If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff fails to allege facts supporting the subjective component. Plaintiff does not allege that Defendants were aware that a substantial risk of serious harm existed as to Plaintiff's

medical conditions.  *See Farmer,* 511 U.S. at 835.  Plaintiff lists all of the Defendants as denying him medical care but Plaintiff does not allege facts from which to infer that Defendants were personally involved in Plaintiff's medical care.  Moreover, Plaintiff complains that the prison did not have adequate medical equipment to determine the cause of his ailments.  Nevertheless, he does not allege that Defendants were subjectively aware of a risk of harm.  Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants.

To the extent Plaintiff claims that Defendants were liable as supervisors, he also fails to state a claim.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants engaged in any active unconstitutional behavior.  Accordingly, he fails to state an Eighth Amendment claim against them.

Plaintiff also alleges that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by failing to provide adequate medical treatment. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff has not alleged that he has been intentionally treated different from other prisoners who were similarly situated. *See Vill. of Willowbrook*, 528 U.S. at 564. From his allegations, it appears that all prisoners, including Plaintiff, are treated the same. Since IBC lacks

an "EKG, M.R.I., X-Ray or Catscan machines" to treat prisoners and only has one doctor for over two thousand prisoners, Plaintiff has not been treated differently from other prisoners needing medical treatment. (Compl., docket #35, Page ID#158.) Accordingly, Plaintiff fails to state an equal protection claim.

Plaintiff further complains that Defendants' denial of medical equipment and treatment violated the Michigan constitution. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated the Michigan constitution therefore fails to state a claim under § 1983.

## B.   Claim 2

In his second claim, Plaintiff complains that because of overcrowding in the prison, he purposely acts out and incurs misconducts to stay in segregation. Since IBC places two people in a cell, Plaintiff alleges that harmful bacteria from the secretion of feces and urine contaminate the air, which causes nausea and vomiting. Moreover, Plaintiff claims that those who use the toilets in the prison cells are exposing themselves to other inmates, and, thus, may become victims of sexual assault. Plaintiff asserts that these prison conditions violate his rights under the Eighth and Fourteenth Amendments, and the Michigan constitution.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The

Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834 (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

In *Rhodes*, 452 U.S. 337, the Supreme Court held that prison overcrowding, standing alone, does not violate the Eighth Amendment. Rather, a plaintiff bears the burden of showing that crowded conditions led to independent deprivations of essential food, medical care, sanitation or other necessities. *Rhodes*, 452 U.S. at 348; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[e]xtreme deprivations" must be alleged in order to support a prison-overcrowding claim). Although Plaintiff may have been subject to uncomfortable living conditions, including unpleasant odors and a lack of privacy while using the bathroom, Plaintiff does not allege that he

- 11 -

was denied essential food, sanitation, medical care or other necessities due to overcrowding.  *See Rhodes*, 452 U.S. at 347- 48; *Argamonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("overcrowding is not, in itself, a constitutional violation, and the plaintiffs have not alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation"); *Halliburton v. Sunquist*, 59 F. App'x 781, 782 (6th Cir. 2003) (double-celling by itself does not violate the Eighth Amendment).  "The federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable." *Neal v. Miller*, 778 F. Supp. 378, 383 (W.D. Mich. 1991); *see also Abdur-Reheem-X v. McGinnis*, No. 99-1075, 1999 WL 1045069, at *3 (6th Cir. Nov. 12, 1999) ("The Eighth Amendment protects Abdur-Reheem-X from conditions of confinement that are health threats; it does not shield him from conditions of confinement that cause mere discomfort). Plaintiff therefore fails to state an Eighth Amendment claim for overcrowding.

Plaintiff also asserts that Defendants violated his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV.  "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002).  "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)).  If such an amendment exists, the substantive due process claim is properly dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment that applies to Plaintiff's claims.  As previously discussed, the Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his overcrowding claims.  *See Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal).  Consequently, Plaintiff's substantive due process claim will be dismissed.

Finally, Plaintiff's state-law claim that overcrowding violated his rights under the Michigan constitution fails to state a claim under Section 1983.  *See Pyles*, 60 F.3d at 1215 (Section 1983 does not provide redress for a violation of a state law).

### C.    Claim 3

In his third claim, Plaintiff alleges that Defendants unconstitutionally banned pornography from the prison in violation of MDOC Policy Directive 04.07.112, "Prisoner Personal

Property" (effective Dec. 12, 2013), and, thereby, violated his First and Eighth Amendment rights and 18 U.S.C. § 2340.

### 1.    First Amendment

Under MDOC Policy Directive 04.07.112, ¶ E(1), a prisoner's possession of publications is governed by MDOC Policy Directive 05.03.118, which addresses prisoner mail. *See* MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ E(1) (effective Dec. 12, 2013). Under MDOC policy, a prisoner may send and receive uncensored mail from any person or organization unless the mail violates policy or an administrative rule. MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ D (effective Sept. 14, 2009). Mail cannot be prohibited solely because its content is "religious, philosophical, political, social, sexual, unpopular, or repugnant." *Id.* However, mail can be prohibited if it is a "threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with rehabilitation of the prisoner." *Id.* Certain types of incoming mail, which are listed in the policy, are deemed to pose these risks under all circumstances. For example, the list includes acts of sadism, masochism, bondage, bestiality, and sexual acts involving children. *Id.*, ¶ MM(5). The policy also prohibits photographs depicting actual or simulated sexual acts by one or more persons, included in a publication sent directly from the publisher or a vendor authorized by the facility. *Id.*, ¶ MM(14). Plaintiff contends that the MDOC policy prohibiting pornography is unconstitutional under the First Amendment.

The Supreme Court considered a similar facial challenge to regulations of the Federal Bureau of Prisons regarding receipt of sexually explicit mail in *Thornburgh v. Abbott*, 490 U.S. 401 (1989). The regulations contained a non-exhaustive list of criteria, including "sexually explicit material which by its nature or content poses a threat to security, good order, or discipline of the

- 14 -

institution, or facilitates criminal activity." *Id.* at 405 n.5. The following types of sexually explicit material could also be rejected: (1) homosexual (of the same sex as the institution population), (2) sado-masochistic, (3) bestiality, and (4) involving children. *Id.* at 405 n.6.

In evaluating the challenge, the Supreme Court recognized that, because "the judiciary is ill-equipped to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh,* 490 U.S. at 407 (quotation omitted). Further emphasizing this deference, the Supreme Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not . . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Id.* at 412-13 (citations omitted).

In light of the deference owed to prison officials, the *Thornburgh* Court held that limits on incoming prisoner publications must be analyzed under the standard applied by the Court in *Turner v. Safley*, 482 U.S. 78 (1987), for determining the constitutionality of limits on incoming prison personal mail. *Thornburgh*, 490 U.S. at 409 (citing *Turner*, 482 U.S. at 89); that is, whether the regulations are "reasonably related to legitimate penological interests." The *Turner* Court identified four factors to be considered in reaching this determination: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it

allegedly furthers; (2) whether there are alternative means by which the inmate may exercise the right impinged; (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally; and (4) the existence or absence of ready alternatives to the regulation in question. *Thornburgh*, 490 U.S. at 414-18 (citing *Turner*, 482 U.S. at 88-91). Applying these factors, the Court found that the regulations were reasonably related to legitimate penological interests and did not violate the First Amendment. *Thornburgh*, 490 U.S. at 413.

In unpublished decisions, the Sixth Circuit has addressed challenges to previous versions of MDOC Policy Directive 05.03.118. *See Ward v. Jones*, No. 02-1924, 2003 WL 1795736, at *1 (6th Cir. Mar. 31, 2003) (analyzing MDOC Policy Directive 05.03.118, ¶ EE(14) (effective Jan. 1, 2001), *amended* ¶ DD(14) (effective Mar. 12, 2001) (prohibiting "photographs depicting actual or simulated sexual acts"). Applying *Turner*, the *Ward* Court concluded that the 2001 policy was reasonably related to the legitimate penological interest of prison security. *See Ward*, 2003 WL 1795736, at *2. The Court further noted that Michigan prisoners may still receive less explicit photographs of an arguably sexual nature. *Id.* In *Rogers v. Martin*, 84 F. App'x 577, 579 (6th Cir. 2003), the Sixth Circuit also upheld a prior version of MDOC Policy Directive 05.03.118, which prohibited the introduction of magazines containing actual or simulated sexual acts:

> [T]he MDOC policy did not violate the First Amendment because: (1) it was rationally related to the goal of a safer prison environment; (2) prisoners had alternative means of acquiring sexually explicit materials such as written descriptions of sex acts and nude photographs that do not depict sexual acts; (3) accommodating the prisoners' right to receive sexually explicit materials in the form of photographs of sexual acts could adversely affect prison guards, other inmates, and the allocation of prison resources by creating a sexually charged atmosphere; and (4) redacting every publication containing photographs that violate the rule is not a ready

alternative to disposing of the offending magazines because of the administrative burden of case-by-case redaction.  *See Turner v. Safley*, 482 U.S. 78, 90-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  Although Rogers argued to the contrary, the defendants were not required to submit evidence that the banned materials actually caused problems in the past or are likely to cause problems in the future, as long as it is plausible that they believed the policy would further a legitimate objective.  *See, e.g., Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999).

*Rogers*, 84 F. App'x at 579.

District courts have also upheld MDOC Policy Directive 05.03.118.  *See Johnson v. Deeren*, No. 2:12-cv-205, 2012 WL 6019365, at **11-12 (W.D. Mich. Dec. 3, 2012) (finding that the restriction of Penthouse for including "sexual simulated acts" in MDOC Policy Directive 05.03.118, ¶ MM(14) (effective Sept. 14, 2009) was clearly related to a legitimate penological interest); *see also Houston v. Caruso,* No. 1:07-cv-960, 2008 WL 5235869, at *7 (W.D. Mich. Nov. 24, 2008) (upholding MDOC Policy Directive 05.03.118, ¶ HH(15) (effective Jan. 1, 2006), which prohibited photographs depicting actual or simulated sexual acts by one or more persons.)

Addressing the first prong of *Turner*, the Sixth Circuit held that a prior version of MDOC Policy Directive 05.03.118, which prohibited publications that contain "actual or simulated sexual acts" was rationally related to the penological goal of a safe prison environment.  *See Rogers*, 84 F. App'x at 579.  Likewise, the present version of MDOC Policy Directive 05.03.118, ¶ MM(14) (effective Sept. 14, 2009), which similarly bans photographs that contain "actual or simulated sexual acts" is rationally related to the penological interest of prison safety.

The second prong of the *Turner* test is whether the prisoners have alternative means of expression.  *See Turner,* 482 U.S. at 92.  The Sixth Circuit has held that prior versions of MDOC Policy Directive 05.03.118 do not preclude written descriptions of sexual acts, *Rogers*, 84 F. App'x at 579, and less explicit photographs of arguably a sexual nature, *Ward*, 64 F. App'x at 424.

- 17 -

Similarly under the current MDOC Policy Directive 05.03.118, Plaintiff may view nude photographs that do not involve sexual acts and receive letters or books describing sexual acts as an alternative means of expression under *Turner,* 482 U.S. at 92.

In addressing the third prong of the *Turner* test, the *Ward* court held that accommodating depictions of sexual acts would have a significant impact on third parties such as prison guards and inmates.  *See Ward*, 64 F. App'x at 424.  The *Ward* court determined that "the disputed photographs contribute to a hostile work environment for staff, a sexually charged and hostile environment for prisoners, offensive conduct and hostile acts by prisoners and violations of visiting room policy."  *Id*.  "Where, . . ., the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike,'. . ., the courts should defer to the 'informed discretion of corrections officials . . . .'"  *Thornburgh*, 490 U.S. at 418.  Because the impact on the third parties is significant, the third factor weighs heavily in favor of finding the prison policy valid.

The last *Turner* prong requires Plaintiff to prove that there exists alternatives to the regulation in question.   Plaintiff has not alleged any alternative means.  Moreover, as the *Ward* court recognized, redacting every publication containing photographs that violate the rule is not a ready alternative because of the administrative burden of a case-by-case redaction.  *Ward*, 84 F. App'x at 579.

In summary, all four *Turner* factors weigh in favor of a finding that MDOC Policy Directive 05.03.118 is reasonably related to the legitimate penological interest of safety. Accordingly, Plaintiff fails to state a First Amendment claim.

### 2.      Remaining Arguments

Plaintiff also argues that Defendants violated his Eighth Amendment rights by failing to provide him with pornographic material. Plaintiff, however, does not satisfy the objective component of an Eighth Amendment claim. The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). The lack of pornographic material in the prisons does not create a condition "intolerable for prison confinement." *Id.* The Constitution "does not mandate comfortable prisons." *Id.* at 349. The lack of pornographic material is simply an unpleasant experience, which is not barred by the Eighth Amendment. *Ivey*, 832 F.2d at 954.

To the extent that Plaintiff relies on 18 U.S.C. § 2340 as a basis for relief, he does not state a cognizable claim. That statute criminalizes torture occurring outside the United States; it does not provide for civil redress for torture occurring within the United States. *Renkel v. United States*, 456 F.3d 640, 644-45 (6th Cir. 2006). Thus, it does not provide a cause of action for the harm alleged by Plaintiff.

### D.      Claim 4

In "Claim 4," Plaintiff complains that Defendants Snyder, Calley, McLellan, Heyns, Finco, McKee and Macaulley violated his First, Fifth, Eighth, Ninth and Fourteenth Amendment rights, the Michigan constitution, and 18 U.S.C. § 2340 by segregating the Michigan prison system based on gender. Plaintiff also complains that Defendants violated his Eighth Amendment rights by exposing him to the risk of rape, sexual assault, homosexuality and violence because of the gender-based segregation. Plaintiff further complains that the lack of social interaction with females has caused psychological damage to him and created sexually frustrated prisoners who are forced

to rape each other or staff.  In addition, Plaintiff alleges that he has a due process interest in being housed in the same prison facilities as females under the Fifth and Fourteenth Amendments.

First, Plaintiff complains that Defendants violated his Eighth Amendment rights by exposing Plaintiff to several potential risks, such as rape, sexual assault, homosexuality and violence, since Michigan prisons are segregated based on gender.  Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment.  *Farmer*, 511 U.S. at 833.  Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care.  *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).  To establish a violation of this right, Plaintiff must show that Defendants were deliberately indifferent to Plaintiff's risk of injury.  *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988).  While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack.  *Thompson,* 29 F.3d at 242-43 (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

Plaintiff has alleged no fact from which to infer that he reasonably fears a sexual assault by another prisoner.  He merely speculates that if the prisons were not segregated by gender, he would be less likely to be exposed to rape, homosexuality, sexual assault and violence by other male prisoners.  Such conclusory allegations fail to state a claim under the Eighth Amendment.

Next, Plaintiff claims that Defendants violated his substantive due process rights by refusing to house male prisoners in the same prison as women.  As previously stated, the right of substantive due process under the Fourteenth Amendment prevents the government from engaging

in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. *Prater*, 289 F.3d at 431.  Because the First Amendment provides an explicit textual source of constitutional protection against limitations on a person's freedom of association, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing Plaintiff's claim. *See Graham*, 490 U.S. at 395.  Accordingly, the Court will review Plaintiff's claim under the First Amendment.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  However, rights inconsistent with proper incarceration are not retained. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *see also Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). As the Supreme Court repeatedly has recognized, freedom of association and assembly are among the rights least compatible with incarceration. *See Bazzetta*, 539 U.S. at 131 (citing *Jones*, 433 U.S. at 125–26, and *Hewitt v. Helms*, 459 U.S. 460 (1983)). Curtailment of those freedoms "must be expected in the prison context." *Id.*

To the extent that prisoners retain any rights to associate with other prisoners, a question the Supreme Court has never definitively answered, prison officials may impinge on those rights if the regulation "is reasonably related to legitimate penological interests." *See Turner*, 482 U.S. at 89, *cited in Bazzetta*, 539 U.S. at 132; *see also Beard v. Banks*, 548 U.S. 521, 528–29 (2006). As the Court previously discussed, to determine whether a regulation or practice is reasonably related to a legitimate penological interest, the Court must assess the following factors:  whether the regulation has a valid, rational connection between the regulation and the governmental interest;

- 21 -

whether alternative means are open to inmates to exercise the right; what impact an accommodation of the right would have guards, inmates and prison resources; and whether there are "ready alternatives" to the regulation. *Turner*, 482 U.S. at 89-91.

Courts have held that safety and security are legitimate penological interests. *See Thornburgh*, 490 U.S. at 415. Obviously, the decision to house women at different facilities than men is rationally related to the government's interest in protecting the safety of its female prisoners.

With respect to the second prong, Plaintiff has not been denied access to all women. Under MDOC Policy Directive 05.03.140, "Prisoner Visiting," ¶¶ B, J (effective Nov. 1, 2013), inmates may interact with female visitors that are grandparents, parents, step-parents, spouses, mother-in-laws, children, step-children, grandchildren, siblings, step-sisters and half-sisters on their approved list. Moreover, Plaintiff is free to correspond with and telephone females. Because male prisoners have alternative means of exercising the right, the policy satisfies the second prong.

For the third prong, the Court must consider the "ripple effect[s]" when analyzing the impact the accommodation would have on third parties such as prison guards, other inmates and prison resources. *Turner*, 482 U.S. at 92. Having female prisoners housed in the prison undoubtedly would contribute to unacceptable and dangerous behaviors among the male inmate population. It also would certainly require more prison resources to keep male and female prisoners in different areas of the prison to avoid sexual assaults, rape and other violence. Accordingly, the Court concludes that the practice of gender segregation in the prisons demonstrably satisfies the third prong of the *Turner* test.

Finally, Plaintiff must allege that no adequate alternative exists for reaching his objective. If the plaintiff "can point to an alternative that fully accommodates the prisoner's rights

at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 90.  Plaintiff has not done so.

In sum, the practice of housing male and female prisoners in separate prisons unquestionably meets the *Turner* test.

Plaintiff also complains that Defendants violated his Ninth Amendment rights.  The Ninth Amendment provides, "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX.  The Sixth Circuit has recognized that this Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). Consequently, the Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (concluding that an alleged violation of the Ninth Amendment will not support a claim under 42 U.S.C. § 1983); *Basile v. Elizabethtown Area Sch. Dist.*, 61 F. Supp. 2d 392, 403 (E.D. Pa. 1999) (recognizing that a § 1983 claim cannot be premised upon an alleged violation of the Ninth Amendment).  As a result, Plaintiff fails to state a Ninth Amendment claim.

Finally, as the Court previously discussed, Plaintiff fails to state a claim under 18 U.S.C. § 2340 because that federal statute criminalizes torture outside of the United States.  *See Renkel*, 456 F.3d at 644-45.  Moreover, Plaintiff's state-law claim under the Michigan constitution fails to state a Section 1983 claim.  *See Pyles*, 60 F.3d at 1215.

- 23 -

## E.       Claim 5

In "Claim 5," Plaintiff argues that  Defendants Snyder, Calley, McLellan and Heyns have denied him "recreational appliances" so that he suffers from sensory deprivation and mental torture.  (Compl., docket #35, Page ID#170.)  Plaintiff also alleges that Defendants violated federal statutes on torture and terrorism, 18 U.S.C. § 2340 and 18 U.S.C. § 2333, respectively, and the Michigan constitution by torturing prisoners with sensory deprivation.  Plaintiff argues that he cannot read a book because a book could trigger seizures.

The Constitution does not give Plaintiff a right to possess recreational appliances while he is in prison.  The Eighth Amendment only guarantees access to the "minimal civilized measure of life's necessities," such as "food, medical care, or sanitation."  *Rhodes*, 452 U.S. at 347-48.  Television, electronic games and computers are not necessities like food, medical care or sanitation, and an absence of these items is not a condition that is "intolerable for prison confinement."  *Id.*; *see Coleman v. Gov. of Mich.*, 413 F. App'x 866, 875 (6th Cir. 2011) (no constitutional right to access a television); *Hudson v. Lincoln Cnty.*, 39 F. App'x 219, 220 (6th Cir. 2002) (fact that prisoner was housed in a cold segregation unit without access to newspapers or television did not state a viable Eighth Amendment claim); *Smith v. Sapp*, Nos. 97–5642, 97–5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) ("forcing an inmate to live without . . . bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim"); *Dean v. Campbell*, No. 97–5955, 1998 WL 466137, at *2 (6th Cir. July 30, 1998) (allegations of "limited recreation opportunities . . . fail to allege facts showing . . . the type of extreme deprivations which are necessary for an Eighth Amendment conditions of confinement claim"); *Rahman X v. Morgan*, 300 F.3d 970 (8th Cir. 2002) ("[T]elevision [is] not necessary for

- 24 -

a civilized life."). Plaintiff therefore fails to state an Eighth Amendment claim for the denial of recreational appliances.

Plaintiff also claims that Defendants violated federal statutes, 18 U.S.C. § 2340 and 18 U.S.C. § 2333. The Court has previously found that Plaintiff may not bring a claim under 18 U.S.C. § 2340. *See Renkel*, 456 F.3d at 644-45. Section 2333 enables private citizens injured by an act of international terrorism to sue for treble damages in federal court. Plaintiff has not alleged that he has been subjected to international terrorism. Moreover, Plaintiff's state-law claim under the Michigan constitution fails to state a Section 1983 claim. *See Pyles*, 60 F.3d at 1215.

### F.    Claim 6

In "Claim 6," Plaintiff alleges that Governor Snyder, MDOC Deputy Director Sherry, MDOC Assistant Deputy Director Finco, Warden McKee, Attorneys McLellan and White, and Congressman Amash violated his First and Fourteenth Amendment rights by "refus[ing] to file, lodge, or otherwise register Plaintiff's petitions for 'legislative' consideration, and otherwise obstructed Plaintiff from being able to petition 'legislative boards' and agencies by mismanaging [Plaintiff's] petitions." (Compl., docket #35, Page ID#173.)

With respect to attorneys McLellan and White, Plaintiff fails to show that they were acting under the color of state law. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922,

937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself."  *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  Plaintiff has not presented any allegations by which attorneys McLellan and White conduct could be fairly attributed to the State.  Accordingly, he fails to state a § 1983 claim against them.[3]

Further, Plaintiff alleges that Defendants Snyder, Sherry, Finco, McKee, McLellan, White and Amash violated his First and Fourteenth Amendment rights by not filing his petitions or mismanaging his petitions for legislative consideration.  For his Fourteenth Amendment claim, Plaintiff is essentially alleging that Defendants violated his substantive due process rights.  As previously stated, the right of substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty. *See Prater*, 289 F.3d at 431.  Because the First Amendment provides an explicit textual source of constitutional protection for the right to petition the government, that Amendment and not the more generalized notion of "substantive due process," is the guide for analyzing Plaintiff's claim.  *See Graham*, 490 U.S. at 395.  As a result, the Court will review Plaintiff's claim under the First Amendment.

The Petition Clause of the First Amendment guarantees the right "to petition the Government for a redress of grievances."  U.S. CONST. amend. I.  The right to petition under the First Amendment, however, is limited to matters of public concern. *Martin v. O'Brien,* 207 F.

---

[3]To the extent that Plaintiff asserts claims of legal malpractice, the claim arises solely under state law.  Section 1983 does not provide redress for a violation of a state law.  *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166.

App'x. 587, 590 (6th Cir. 2006) (citing *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226 (6th Cir. 1997)).  In *Connick v. Myers*, 461 U.S. 138, 146 (1983), the Supreme Court explained that speech addresses a matter of public concern where it can "be fairly considered as relating to any matter of political, social, or other concern to the community . . . ."  In *Valot*, the Sixth Circuit stated that the inquiry as to whether speech addresses a matter of public concern is guided by " 'the content, form, and context of a given statement, as revealed by the whole record.' " 107 F.3d at 1226 (quoting *Connick*, 461 U.S. at 147 - 48). "Speech does not generally touch on a matter of public concern, as that requirement has been interpreted, where its aim is to air or remedy grievances of a purely personal nature." *Id.*  Plaintiff has wholly failed to allege any facts demonstrating that his petitions involve matters of public concern.  In fact, Plaintiff does not even specify what he wanted to have redressed in his petitions.

Moreover, by its terms, the Petition Clause guarantees the right to petition the government and prevents the government from taking action against a citizen for exercising that right.  The Clause contains no requirement that the government take action on such petitions or resolve any petition in favor of the petitioner.  Here, Plaintiff fails to allege that any Defendant prevented Plaintiff from lodging his complaints, retaliated against him for doing so, or engaged in any active conduct with respect to his complaints.  Plaintiff therefore fails to allege that any Defendant, "through his own individual actions, has violated the Constitution."  *Iqbal,* 556 U.S. at 676.  Accordingly, Plaintiff fails to state a First Amendment claim against Defendants Snyder, Sherry, Finco, McKee, McLellan, White and Amash.

### G.    Claim 7

In his seventh claim, Plaintiff alleges that Defendants violated his Fourth, Fifth and Fourteenth Amendment rights, the Civil Rights of Institutionalized Persons Act of 1980 (CRIPA) and the Michigan constitution by enforcing MDOC Policy Directive 04.07.112, "Prisoner Personal Property," (effective Dec. 12, 2013).   Plaintiff complains that the regulations on property and appliances are unfair and discriminatory and violate Plaintiff's equal protection rights.  Plaintiff also states that the MDOC regulations target poor people because they cannot afford MP3 players, televisions and electronic appliances.   In addition, Plaintiff complains that MDOC Policy Directive 04.07.112 unlawfully bans electronic games, tablets and computers.

Plaintiff claims that he was treated unfairly by Defendants in violation of the Equal Protection Clause of the Fourteenth Amendment because he is poor.  As previously discussed, under the Equal Protection Clause, a state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret.*, 427 U.S. at 312.  The poor are not considered a suspect class because wealth is a fluctuating characteristic unlike race or national origin. *See Harris v. McRae*, 448 U.S. 297, 323 (1980) ("[T]his Court has held repeatedly that poverty, standing alone, is not a suspect classification.") (citation omitted); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973) ("wealth discrimination alone [does not] provid[e] an adequate basis for invoking strict scrutiny"); *City of Cleburne*, 473 U.S. at 438, 440–41 (discussing the immutable nature of personal characteristics that can trigger strict scrutiny, or at least heightened scrutiny).   Furthermore, "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson*, 411 F.3d at 619;

- 28 -

*see also Wilson*, 148 F.3d at 604. In addition, the courts have never held that prisoners have a fundamental constitutional right to possess spending money under the Constitution.

As a result, to prove his equal protection claim, Plaintiff must demonstrate he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564. Plaintiff has not alleged that he has been intentionally treated differently from other prisoners who cannot afford MP3 players, televisions and electronic appliances. Plaintiff does not suggest that other prisoners, who cannot afford MP3 players, televisions and electronic appliances, are given those items without paying for them. Accordingly, Plaintiff fails to state an equal protection claim.

Plaintiff alleges that Defendants violated his Fourth and Fifth Amendment rights, CRIPA and the Michigan constitution by enforcing MDOC Policy Directive 04.07.112. Plaintiff has not provided any allegations as to how the enforcement of MDOC Policy Directive 04.07.112 violates his constitutional rights or his rights under CRIPA. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, as previously discussed, violations of a state-law are not cognizable under § 1983. *See Pyles*, 60 F.3d at 1215. In addition, Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr.

21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).

### H.    Supplemental Jurisdiction

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id.* Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611

(6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no

good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the

$505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: June 12, 2015 _____          /s/ Janet T. Neff _____
                                                Janet T. Neff
                                                United States District Judge

- 31 -